**JWB**

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David A. Higdon,<br><br>  Plaintiff,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>  Defendants. | No. CV 13-0475-PHX-DGC (JFM)<br><br>**ORDER** |

Plaintiff David A. Higdon, who is currently confined in the Arizona State Prison Complex-Lewis Rast Unit in Buckeye, Arizona, filed a complaint in Maricopa County Superior Court, matter No. CV2012-018711. In his Complaint, Plaintiff asserted violations of his constitutional rights (Doc. 1-2, Ex. C, Attach. 1 at 10) ("Compl."). Plaintiff sued six Arizona Department of Corrections (ADC) officials: Director Charles Ryan, General Counsel Karen Klausner, Deputy Warden Dorsey, Captain Summers, Sergeant Trujillo, and Correctional Officer II Stapleton (id. at 2). Defendant Ryan timely removed the case to federal court based on federal question subject matter jurisdiction on March 7, 2013.[1]

The Complaint facially supports that subject matter jurisdiction is proper in federal court and that the case was timely removed. 28 U.S.C. § 1446(b). The Court will dismiss Plaintiff's Complaint and this action.

///

---

[1] Ryan received a request for waiver of service of summons on February 8, 2013 (Doc. 1 at 1).

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a), (e)(2). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

///

- 2 -

## II.     Complaint

Plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights (Compl. at 10). He presents the following facts: on December 4, 2011, Plaintiff received a visit from his wife, father, and three children, which was supervised by Stapleton (id. at 3). While standing in the outside visitation area, Plaintiff was holding his six-month-old baby while his wife stood next to him. Plaintiff's father and other two children (ages six and seven) were standing in front of Plaintiff. Plaintiff and his visitors were in direct view of a video surveillance camera as well as other visitors and inmates (id.).

At approximately 11:50 a.m., Stapleton came outside and ordered Plaintiff and his family to come inside. Stapleton informed them that their visit was terminated but she would not explain why (id. at 3-4). Before exiting the unit, CO Card detained Plaintiff's wife for approximately 15 minutes and repeatedly asked her to "just admit what she'd done wrong and that way it would go easier on her" (id. at 4).

On December 5 at 10:00 a.m., Trujillo delivered to Plaintiff a misconduct report for Sexual Abuse (id.). Trujillo explained that Stapleton reported that she observed Plaintiff's erect penis being manually manipulated by Plaintiff's wife while they were standing outside. Plaintiff told Trujillo that there were numerous witnesses who could controvert Stapleton's allegations and that the videotape surveillance would similarly disprove the allegations. Trujillo gave Plaintiff two witness statement forms, one for Stapleton and one for inmate Tony Brown and informed Plaintiff that he (Trujillo) would investigate the incident thoroughly and refer the case to a Disciplinary Hearing Officer (id. at 4-5). Plaintiff contacted his wife later that day, explaining the situation. She, in turn, contacted CIU Officer Williams and informed him of the incident and the falsity of the allegations. She asked Williams to review the videotape evidence and to help exonerate Plaintiff (id. at 5).

At 7:30 a.m. on December 7, Plaintiff was directed to turn in his witness statement forms; Plaintiff complied at 8:00 a.m. Summers conducted Plaintiff's disciplinary hearing at 12:00 p.m. on December 7 (id. at 5-6). Summers denied Plaintiff the right to present witnesses, was not given 48 hours to prepare for the hearing, and known witnesses were not

- 3 -

called or interviewed. Trujillo failed to conduct a minimal investigation by not contacting known civilian and inmates witnesses and by failing to review the video surveillance evidence. Plaintiff also learned that Stapleton had the misconduct report returned to her three times for rewriting and/or to change details contained therein (id. at 6).

Plaintiff was found guilty of Sexual Abuse and lost 90 days Earned Release Credits (id. at 6-7). Plaintiff also was sanctioned to 30 days in Parole Class III, which deprived him of the right to earn release credits, visitation, and all other privileges (id. at 7). Plaintiff appealed the disciplinary charge through two levels of appeal, but Dorsey, Klausner, and Ryan took no action other than to uphold the findings (id. at 7-8).

Plaintiff argues that Defendants actions violated his First, Eighth, and Fourteenth Amendment rights and seeks costs, compensatory and punitive damages, transfer to an out-of-state facility, and injunctive relief.

**III.  Failure to State a Claim under § 1983 – Heck v. Humphrey Bar**

When success on a claim could potentially affect the duration of confinement, habeas corpus is the appropriate and exclusive vehicle to seek relief; a civil rights action pursuant to § 1983 is not available unless and until the prisoner has obtained a "favorable termination" of the underlying disciplinary action. Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004). That is, a civil rights claim under § 1983 *does not accrue* unless or until the prisoner has obtained a "favorable termination" of the underlying disciplinary action. See Heck v. Humphrey, 512 U.S. 477, 489 (1994). Under the "favorable termination" rule:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction of sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus . . .

Heck, 512 U.S. at 486-87. The "favorable termination" rule has been extended to prison disciplinary actions, when alleged due process defects, if established, would "necessarily imply the invalidity of the deprivation of [the prisoner's] good-time credits." Edwards v. Balisok, 520 U.S. 641, 646 (1997); cf. Butterfield v. Bail, 120 F.3d 1023 (9th Cir. 1997) (applying the "favorable termination rule" in challenge to parole revocation). Thus, where

- 4 -

1  success in a prisoner's action would decrease the length of his sentence, a § 1983 claim is not
2  cognizable until the disciplinary conviction has been invalidated. That appears to be the case
3  here. To prevail on any of his claims for damages under § 1983 would necessarily
4  undermine the validity of his disciplinary proceedings. Therefore, Plaintiff must seek review
5  of the disciplinary proceedings and obtain a "favorable termination" before he may seek
6  damages pursuant to § 1983 for his First, Eighth, and Fourteenth Amendment claims.

7  To challenge disciplinary proceedings, a prisoner may seek federal habeas relief
8  pursuant to 28 U.S.C. § 2254, which is the "exclusive vehicle" for a state prisoner to seek
9  relief from an administrative decision in federal court. See White v. Lambert, 370 F.3d 1002,
10  1009-10 (9th Cir. 2004). Before a federal court may grant habeas relief, however, a prisoner
11  must first have exhausted remedies available in the state courts. See 28 U.S.C. § 2254(b)(1);
12  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The federal court will not entertain a
13  petition for writ of habeas corpus unless each and every issue has been exhausted. Rose v.
14  Lundy, 455 U.S. 509, 521-22 (1982); Olvera v. Guirbino, 371 F.3d 569, 572 (9th Cir. 2004)
15  (district court may not consider a claim until petitioner has properly exhausted all available
16  remedies). When seeking habeas relief, the burden is on the habeas petitioner to show that
17  he has properly exhausted each claim. Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir.
18  1981) (*per curiam*).

19  Plaintiff indicates that he has only challenged his disciplinary conviction in the
20  prison's internal process and not in the state courts. To exhaust claims, however, a prisoner
21  must give the state courts a "fair opportunity" to act on his claims. Castillo v. McFadden,
22  370 F.3d 882 (9th Cir. 2004). He must describe both the operative facts and the federal legal
23  theory so that the state courts have a "fair opportunity" to apply controlling legal principles
24  to the facts bearing upon his constitutional claim." Kelly v. Small, 315 F.3d 1063, 1066 (9th
25  Cir. 2003). A prisoner seeking to exhaust claims in state court before filing a federal habeas
26  action should diligently pursue his available state remedies to avoid application of the one-
27  year limitation period. See Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004) (applying
28  § 2244(d) to a habeas petition challenging a disciplinary order).

Plaintiff appears to have an available remedy in state court to exhaust his claims challenging the disciplinary proceedings prior to filing a federal habeas corpus petition. Although Arizona's Administrative Review Act does *not* authorize state judicial review of prison disciplinary proceedings, an inmate may seek such review by bringing a special action in superior court. Rose v. Arizona Dep't of Corr., 804 P.2d 845, 847-50 (Ariz. Ct. App. 1991). If unsuccessful, the inmate must then appeal the superior court's ruling to the Arizona Court of Appeals to exhaust his claims before seeking federal habeas relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999). For these reasons, Plaintiff's Complaint must be dismissed.

**IT IS ORDERED:**

(1)  The Complaint (Doc. 1-2, Ex. C, Attach. 1) is **dismissed** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1), and the Clerk of Court must enter judgment accordingly.

(2)  The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(3)  The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 26th day of June, 2013.

_____
David G. Campbell
United States District Judge