**JWB**

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David A. Higdon, | No. CV 13-0475-PHX-DGC (JFM) |
| Plaintiff, | **ORDER** |
| vs. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

On December 31, 2012, Plaintiff David A. Higdon, who is currently confined in the Arizona State Prison Complex-Lewis Rast Unit in Buckeye, Arizona, filed a complaint in Maricopa County Superior Court, matter No. CV2012-018711, suing six Arizona Department of Corrections (ADC) officials (Doc. 1-2, Ex. C, Attach. 1 at 10). Defendant Ryan timely removed the case to federal court based on federal question subject matter jurisdiction on March 7, 2013. By order dated June 26, 2013, the Court screened the Complaint pursuant to 28 U.S.C. § 1915A(a), dismissed the action for failure to state a claim, and entered Judgment against Plaintiff (Docs. 3-4). Plaintiff moves to reconsider that ruling (Doc. 5).

The Court will grant Plaintiff's motion, vacate the Judgment, and provide Plaintiff with 30 days to file an amended complaint.

## I.     Background

Plaintiff alleged that his First, Eighth, and Fourteenth Amendment rights were violated when allegedly false disciplinary charges were filed against him (Compl. at 10). Specifically, Plaintiff averred that on December 4, 2011, Plaintiff received a visit from his wife, father,

and three children, which was supervised by Stapleton (id. at 3). While standing in the outside visitation area, Plaintiff was holding his six-month-old baby while his wife stood next to him. Plaintiff's father and other two children (ages six and seven) were standing in front of Plaintiff. Plaintiff and his visitors were in direct view of a video surveillance camera as well as other visitors and inmates (id.). A short time later, Stapleton came outside and ordered Plaintiff and his family to come inside. Stapleton informed them that their visit was terminated but she would not explain why (id. at 3-4). Before exiting the unit, CO Card detained Plaintiff's wife for approximately 15 minutes and repeatedly asked her to "just admit what she'd done wrong and that way it would go easier on her" (id. at 4).

On December 5 at 10:00 a.m., Trujillo delivered to Plaintiff a misconduct report for Sexual Abuse (id.). Trujillo explained that Stapleton reported that she observed Plaintiff's erect penis being manually manipulated by Plaintiff's wife while they were standing outside. Plaintiff told Trujillo that there were numerous witnesses who could controvert Stapleton's allegations and that the videotape surveillance would similarly disprove the allegations. Trujillo gave Plaintiff two witness statement forms, one for Stapleton and one for inmate Tony Brown and informed Plaintiff that he (Trujillo) would investigate the incident thoroughly and referred the case to a Disciplinary Hearing Officer (id. at 4-5). Plaintiff contacted his wife later that day, explaining the situation. She, in turn, contacted CIU Officer Williams and informed him of the incident and the falsity of the allegations. She asked Williams to review the videotape evidence and to help exonerate Plaintiff (id. at 5).

At 7:30 a.m. on December 7, Plaintiff was directed to turn in his witness statement forms; Plaintiff complied at 8:00 a.m. Summers conducted Plaintiff's disciplinary hearing at 12:00 p.m. on December 7 (id. at 5-6). Summers denied Plaintiff the right to present witnesses, was not given 48 hours to prepare for the hearing, and known witnesses were not called or interviewed. Trujillo failed to conduct a minimal investigation by not contacting known civilian and inmates witnesses and by failing to review the video surveillance evidence. Plaintiff also learned that Stapleton had the misconduct report returned to her three times for rewriting and/or to change details contained therein (id. at 6).

1    Plaintiff was found guilty of Sexual Abuse and lost 90 days Earned Release Credits
2 (id. at 6-7).  Plaintiff also was sanctioned to 30 days in Parole Class III, which deprived him
3 of the right to earn release credits, visitation, and all other privileges (id. at 7). Plaintiff
4 appealed the disciplinary charge through two levels of appeal, but Dorsey, Klausner, and
5 Ryan took no action other than to uphold the findings (id. at 7-8).

6    Plaintiff argues that Defendants actions violated his First, Eighth, and Fourteenth
7 Amendment rights and seeks costs, compensatory and punitive damages, transfer to an out-
8 of-state facility, and injunctive relief.

9    The Court dismissed the Complaint, explaining that when success on a claim could
10 potentially affect the duration of confinement, habeas corpus is the appropriate and exclusive
11 vehicle to seek relief; a civil rights action pursuant to § 1983 is not available unless and until
12 the prisoner has obtained a "favorable termination" of the underlying disciplinary action.
13 Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) (Doc. 3). The "favorable termination"
14 rule has been extended to prison disciplinary actions, when alleged due process defects, if
15 established, would "necessarily imply the invalidity of the deprivation of [the prisoner's]
16 good-time credits." Edwards v. Balisok, 520 U.S. 641, 646 (1997) (id.).

17 **II.    Motion for Reconsideration**

18    In his motion, Plaintiff asserts that because he is serving a natural life sentence, the
19 loss of good-time credits could have no impact on the length of his sentence (Doc. 5).  As a
20 result, Plaintiff argues his claim is not barred by Edwards v. Balisok (id.).

21    **A.    Governing Standard**

22    Petitioner has filed a timely motion to alter or amend under Rule 59(e) of the Federal
23 Rules of Civil Procedure. Am. Ironworks & Erectors, Inc. v. N. Am. Contr. Corp., 248 F.3d
24 892, 898-99 (9th Cir. 2001) ("a motion for reconsideration is treated as a motion to alter or
25 amend judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within" the
26 time provided under the rule).  A Rule 59(e) motion is appropriate "if the district court: (1)
27 is presented with newly discovered evidence, (2) committed clear error or the initial decision
28 was manifestly unjust, or (3) if there is an intervening change in the controlling law." Circuit

City Stores, Inc. v. Mantor, 417 F.3d 1060, 1064 (9th Cir. 2005) (quoting Sch. Dist. No 1J, Multnomah County v. ACandS, Inc., 5 F .3d 1255, 1263 (9th Cir.1993)). However, generally, motions for reconsideration should be granted only in rare circumstances. Defenders of Wildlife v. Browner, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Mere disagreement with a previous order is an insufficient basis for reconsideration. See Leong v. Hilton Hotels Corp., 689 F. Supp. 1572, 1573 (D. Haw. 1988). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).

**B.    Analysis**

Plaintiff is correct that his natural life sentence takes his case outside the ambit of Edwards, whereby success on his due process claim would not necessarily impact the length of his sentence. The Court notes, however, that in his Complaint, Plaintiff alleged multiple times that he lost good time credits as a result of the challenged disciplinary violation (Doc. 1-2, Ex. C, Attach. 1 at 6, 7, 8, 12) and *nowhere* did he allege that he was serving a natural life sentence. Nevertheless, the Court will grant reconsideration to the extent that Edwards no longer serves as a barrier to Plaintiff's claims. The Court must therefore continue to screen Plaintiff's Complaint.

**III.    Screening of Plaintiff's Complaint**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-

- 4 -

unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951. But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

### IV.     Failure to State a Claim

Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the United States Constitution and federal law. 42 U.S.C. § 1983; see also Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995). To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). A plaintiff must also allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

**A.  Due Process**

In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard.

Liberty interests which entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted).

Therefore, to determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995) (quoting Sandin, 515 U.S. at 486).

To determine whether the sanctions are atypical and a significant hardship, courts look to prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. See Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. See Carlo v. City of Chino, 105 F.3d 493, 499 (9th Cir. 1997). See, *e.g.*, Sandin, 515 U.S. at 472, 115 S.Ct. at 2293 (30 days disciplinary segregation is not atypical and significant); Torres v. Fauver, 292 F.3d 141, 151 (3rd Cir. 2002) (four months in administrative segregation is not atypical and significant); Jacks v. Crabtree, 114 F.3d 983 (9th Cir. 1997) (denial of year sentence reduction is not an atypical and significant hardship); Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (two and one-half years of administrative segregation is not atypical and significant); Griffin v. Vaughn, 112 F.3d 703, 706-708 (3rd Cir.1997) (fifteen months administrative segregation is not atypical and significant); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (six months of confinement in especially disgusting conditions that were "more

burdensome than those imposed on the general prison population were not "atypical ... in relation to the ordinary incidents of prison life.").

Here, Plaintiff alleges that he suffered 30 days loss of visits and all privileges. But none of the sanctions imposed constitute atypical or significant hardships that would trigger a liberty interest. Plaintiff also alleges that he lost all contact visitation privileges. But the Due Process Clause does not guarantee a right of unfettered visitation. See Kentucky Dep't. of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996). Additionally, the Ninth Circuit has squarely held that prisoners have no right to contact visitation. Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994); Toussaint v. McCarthy, 801 F.2d 1080, 1113 (9th Cir.). Even a blanket prohibition of contact visitation between pretrial detainees and their families is constitutionally sound. Block v. Rutherford, 468 U.S. 576 (1984). Thus, a loss of contact visitation cannot form the basis for an independent due process violation.

The Court will however, dismiss this claim with leave to amend to allow Plaintiff to demonstrate that imposition of noncontact visit status implicated a state-created liberty interest and, thus, imposed an "atypical and significant hardship." See Sandin, 515 U.S. at 484.

**B.    Retaliation**

Plaintiff also asserts in passing that Defendants actions are part of a campaign of harassment and retaliation (Compl. at 8-9). To state a viable claim for First Amendment retaliation, a plaintiff must allege facts to support that: (1) a state actor took some adverse action against him (2) because of (3) his protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights (or that the plaintiff suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating

1 that his exercise of his First Amendment rights was a substantial or motivating factor behind
2 the defendants' conduct. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274,
3 287 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

While Plaintiff complains that this disciplinary charge is part of a pattern of retaliation and harassment, he wholly fails to allege facts to support that any Defendant lodged the disciplinary charge against him in retaliation for any constitutionally-protected conduct. Nor has Plaintiff alleged facts to support that the alleged retaliation chilled the exercise of his First Amendment rights or that they did not serve legitimate penological interests. Accordingly, Plaintiff also fails to state a claim for retaliation and the Court will dismiss this claim with leave to amend.

**C.   State Law Allegations**

If a federal court has original jurisdiction over an action, such as a case asserting violations of 42 U.S.C. § 1983, the doctrine of pendent jurisdiction allows a federal court to exercise "pendent" or "supplemental" jurisdiction over closely-related state law claims. Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004) (citing 28 U.S.C. § 1367(a)). However, because Plaintiff fails to allege a federal constitutional violation against any Defendant, the Court will dismiss the Complaint with leave to amend and the Court declines to exercise jurisdiction over Plaintiff's state law claims, which will be dismissed without prejudice.

**V.   Leave to Amend**

For the foregoing reasons, Plaintiff's Complaint will be dismissed for failure to state a claim upon which relief may be granted. Within 30 days, Plaintiff may submit a first amended complaint to cure the deficiencies outlined above. The Clerk of Court will mail Plaintiff a court-approved form to use for filing a first amended complaint. If Plaintiff fails to use the court-approved form, the Court may strike the amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint." The first amended complaint must be retyped or rewritten in its

1 entirety on the court-approved form and may not incorporate any part of the original
2 Complaint by reference. Plaintiff may include only one claim per count.

3       A first amended complaint supersedes the original complaint. Ferdik v. Bonzelet, 963
4 F.2d 1258, 1262 (9th Cir. 1992); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542,
5 1546 (9th Cir. 1990). After amendment, the Court will treat an original complaint as
6 nonexistent. Ferdik, 963 F.2d at 1262. Any cause of action that was raised in the original
7 complaint is waived if it is not raised in a first amended complaint. King v. Atiyeh, 814 F.2d
8 565, 567 (9th Cir. 1987).

9 **VI.  Warnings**

10     **A.  Release**

11     Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.
12 Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay
13 the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result
14 in dismissal of this action.

15     **B.  Address Changes**

16     Plaintiff must file and serve a notice of a change of address in accordance with Rule
17 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other
18 relief with a notice of change of address. Failure to comply may result in dismissal of this
19 action.

20     **C.  Copies**

21     Plaintiff must submit an additional copy of every filing for use by the Court. See
22 LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice
23 to Plaintiff.

24     **D.  Possible "Strike"**

25     Because the Complaint has been dismissed for failure to state a claim, if Plaintiff fails
26 to file an amended complaint correcting the deficiencies identified in this Order, the
27 dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).
28 Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil

judgment *in forma pauperis* under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

### E.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's motion for reconsideration (Doc. 5) is **granted** and judgment entered on June 26, 2013 (Doc. 4) is **vacated**.

(2)     The Complaint is **dismissed** for failure to state a claim (Doc. 1). Plaintiff has **30 days** from the date this Order is filed to file a first amended complaint in compliance with this Order.

(3)     If Plaintiff fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

(4)     The Clerk of Court must mail Plaintiff a court-approved form for filing a civil rights complaint by a prisoner.

DATED this 30th day of December, 2013.

_____
David G. Campbell
United States District Judge