**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David A. Higdon,<br><br>            Plaintiff,<br><br>vs.<br><br>Charles L. Ryan,<br><br>            Defendant. | No. CV 13-0475-PHX-DGC (JFM)<br><br>**ORDER** |

David Higdon, who is currently confined in the Arizona State Prison Complex-Lewis Buckley Unit in Buckeye, Arizona, filed a complaint in Maricopa County Superior Court, matter No. CV2012-018711, suing six Arizona Department of Corrections (ADC) officials (Doc. 1-2, Ex. C, Attach. 1 at 10). Defendant Ryan timely removed the case to federal court based on federal question subject matter jurisdiction on March 7, 2013. Before the Court is Plaintiff's First Amended Complaint (Doc. 7), filed in compliance with the Court's December 30, 2013 Order. The Court will direct Stapleton and Dorsey to answer Counts I (in part) and III (in part), and will dismiss the remaining claims and Defendants without prejudice.

**I.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon

TERMPSREF

which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

**II. First Amended Complaint**

Plaintiff presents three counts for relief alleging violations of his First Amendment rights, his due process rights, and his Eighth Amendment rights (Doc. 7 at 3-5). Plaintiff sues the following ADC officials: Charles Ryan, Director; Karen Klausner, General Counsel; Regina Dorsey, Buckley Unit Deputy Warden; Bobby Williams, Criminal

Investigations Unit Supervisor; Richardson,[1] Lewis Complex Captain; Trujillo, Lewis Complex Lieutenant; and Tracy Stapleton, Lewis Complex Correctional Officer II (Doc. 7 at 1-1(a)).  Plaintiff seeks declaratory, injunctive, and compensatory relief (*id.* at 6-6(b)).

In Count I, Plaintiff alleges that in late November, 2011, he learned of a planned attack on a black inmate by a member of a white supremacist prison gang.  Plaintiff spoke with his wife on the telephone and they decided to try to prevent the attack from occurring.  Plaintiff's wife called Buckley Unit visitation staff and informed them of the planned attack.  Buckley staff failed to take action and the black inmate was stabbed in his heart/chest area.  After the incident, Plaintiff informed the Buckley staff members that he was going to have his wife report their deliberate indifference to the ACLU and that his wife would testify for the victim if a civil suit was filed.  Plaintiff alleges that he was subjected to the following retaliatory acts after this incident: (1) Stapleton and Dorsey issued a false disciplinary report against Plaintiff on December 4, 2011, alleging acts of public sexual indecency, which resulted in the termination of Plaintiff's visitation and discredited Plaintiff and his wife; (2) Ryan, Williams, Dorsey, and Stapleton had a criminal complaint filed against Plaintiff's wife in January 2013 after Plaintiff filed this lawsuit; (3) in April/May 2013, Plaintiff was moved back to Buckley Unit and Stapleton, under Dorsey's authority, offered two inmates a favorable job recommendation if they would assault Plaintiff, which the inmates carried out on May 18, 2013; (4) between April and July 2013, Buckley visitation staff refused to allow Plaintiff's father to visit while carrying his nitroglycerin medication; (5) between July and October 2013, Dorsey suspended Plaintiff's visitation privileges again without due process; (6) after Plaintiff had his visitation restored, Buckley unit staff refused to allow Plaintiff's children to remove their jackets when it became warm outside during visitation; and (7) on December 6, 2013, Dorsey suspended Plaintiff's visitation privileges indefinitely (*id.* at

---

[1] Plaintiff states that Captain Richardson's last name changed from Summers due to a change in marital status.

3-3(b)).

In Count II, Plaintiff alleged that he was denied due process during the December 2011 disciplinary proceedings because he was not given 48 hours to prepare for the hearing and he was not given the opportunity to present witnesses in his defense. Further, Trujillo failed to conduct a minimal investigation where he failed to contact known civilian and inmate witnesses and failed to review the video surveillance evidence. Similarly, Richardson found Plaintiff guilty despite the absence of "some evidence" required where there was no inculpatory evidence, she did not review the videotape surveillance of the alleged incident, she allowed Stapleton to fill out Stapleton's witness statement after the conclusion of the formal hearing, and she refused to allow Plaintiff to offer any evidence or witnesses in his defense. Plaintiff appealed the disciplinary charge through two levels of appeal, but Dorsey, Klausner, and Ryan upheld the findings (*id.* at 4-4(b)).

In Count III, Plaintiff contends that the false disciplinary charge leveled against him placed him at serious risk of physical harm. Plaintiff asserts that Ryan and Dorsey's failure to move Plaintiff from the Buckley yard; Trujillo and Summers' actions in finding Plaintiff guilty; and Dorsey, Klausner, and Ryan's decision to uphold the disciplinary findings exacerbated that risk. In early 2012, Plaintiff began treatment for fear, anxiety, and depression, and, in June 2012, he was transferred to the Rast Unit, where he lived for 10 months without incident. In April 2013, Dorsey and Ryan allowed Plaintiff to be moved back to the Buckley Unit, again placing him at great risk of serious physical harm.

Thereafter, on May 1, 2013, Stapleton provided two inmates with a copy of Plaintiff's disciplinary report and instructed them to assault the Plaintiff, which was carried out on May 18. Since the assault, Dorsey has administratively attacked Plaintiff with the deprivation of his visitation privileges (*id.* at 5-5(a)).

**IV.    Failure to State a Claim Under § 1983**

A plaintiff may seek relief for violations of his federal constitutional or statutory rights under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege

1  facts supporting that (1) the conduct about which he complains was committed by a
2  person acting under the color of state law and (2) the conduct deprived him of a federal
3  constitutional or statutory right.  *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).
4  In addition, a plaintiff must allege that he suffered a specific injury as a result of the
5  conduct of a particular defendant and he must allege an affirmative link between the
6  injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377
7  (1976).

### A.  Count I (in part)

In Count I, Plaintiff alleges a series of seven retaliatory acts by Defendants.  A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights (or the plaintiff suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Six of the alleged retaliatory acts fail to state a claim.  In three instances, Plaintiff asserts that Defendants took adverse actions against his wife, father, and children.  But the alleged adverse action in a viable retaliation claim must be taken *against Plaintiff*. *Rhodes v. Robinson*, 408 F.3d 559, 567-68.  There is no case law supporting the notion that actions taken against his wife, father, or children can be imputed to Plaintiff for purposes of a retaliation claim.  These incidents, therefore, fail to state a claim.

With respect to Plaintiff's allegations that Stapleton and Dorsey orchestrated an assault against Plaintiff and Defendants suspended Plaintiff's visitation privileges on

multiple occasions, Plaintiff does not connect those actions to his protected conduct.[2]  He assumes that all actions after November 2011 are in retaliation for reporting staff's failure to protect another inmate, but these alleged retaliatory acts occurred between 6 and 18 months after Plaintiff's protected conduct and Plaintiff supplies no facts to link the acts with his report.  Thus, while "timing can be properly considered as circumstantial evidence of retaliatory intent," there generally must be something more than timing alone to support an inference of retaliatory intent." *Pratt*, 65 F.3d at 808.  Retaliation is not established simply by showing adverse activity by defendant after protected speech; plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir.2000) (a retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").  Because Plaintiff fails to provide any nexus between his protected conduct and the alleged assault or the loss of visitation, those retaliation claims will be dismissed.

### B.   Count II

Plaintiff again presents a due process claim in Count II stemming from his December 2011 disciplinary charges.  In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard.

Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Therefore, to determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant

---

[2] The Court considers this claim again as an independent Eighth Amendment violation, as discussed below.

deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486).

To determine whether a sanction constitutes an atypical and a significant hardship, courts look to a prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). *See, e.g.*, *Sandin*, 515 U.S. at 472 (30 days disciplinary segregation is not atypical and significant); *Torres v. Fauver*, 292 F.3d 141, 151 (3rd Cir. 2002) (four months in administrative segregation is not atypical and significant); *Jacks v. Crabtree*, 114 F.3d 983 (9th Cir. 1997) (denial of year sentence reduction is not an atypical and significant hardship); *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998) (two and one-half years of administrative segregation is not atypical and significant); *Griffin v. Vaughn*, 112 F.3d 703, 706-708 (3rd Cir. 1997) (fifteen months' administrative segregation not atypical and significant); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (six months of confinement in especially disgusting conditions that were "more burdensome than those imposed on the general prison population were not "atypical ... in relation to the ordinary incidents of prison life.").

Plaintiff alleges that he suffered 30 days' loss of visits and privileges, but none of the sanctions imposed constitute atypical or significant hardships that would trigger a liberty interest. Plaintiff also alleges that he lost all contact visitation privileges, but the Due Process Clause does not guarantee a right of unfettered visitation. *See Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Keenan*, 83 F.3d at 1092. Additionally, the Ninth Circuit has squarely held that prisoners have no right to contact visitation. *Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994); *Toussaint v. McCarthy*, 801 F.2d 1080, 1113 (9th Cir.). Even a blanket prohibition of contact visitation between pretrial detainees and their families is constitutionally sound. *Block v. Rutherford*, 468

U.S. 576 (1984). Thus, a loss of contact visitation cannot form the basis for an independent due process violation. Nothing in Plaintiff's amended pleading supports a finding that the denial of contact visitation was a significant and atypical hardship and Plaintiff's due process claim must again be dismissed.

### C.     Count III (in part)

In Count III, Plaintiff alleges that Defendants' roles in issuing a false disciplinary violation or failing to reverse it "put [him] at serious risk of physical harm." To state a claim under § 1983 for failure to protect or threats to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. *Id.* at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Id.* In this claim, however, Plaintiff fails to allege any facts to support how the disciplinary charges levied against him placed him at risk or how each Defendant knew, or should have known, that their actions would place Plaintiff at a substantial risk of serious harm. Thus, this aspect of Plaintiff's failure-to-protect count fails to state a claim.

### D.     Dismissal of Defendants

Because no claims remain against Ryan, Klausner, Williams, Trujillo, and Richardson, they will be dismissed.

### IV.    Claims for Which an Answer Will be Required

In Count I (in part), Plaintiff alleges that Defendants Stapleton and Dorsey filed false disciplinary charges against him to discredit him in retaliation for exposing staff failure to prevent an inmate assault. This states a plausible retaliation clam. And in Count III (in part), Plaintiff asserts that Stapleton, under Dorsey's authority, orchestrated an assault on Plaintiff that occurred on May 18, 2013. This sufficiently states an Eighth

Amendment threat to safety claim. Defendants Stapleton and Dorsey will be required to respond to these claims.

## V. Warnings

### A. Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED**:

(1) Plaintiff's Motion for an Extension of Time to file his First Amended Complaint (Doc. 8) is **denied as moot**.

TERMPSREF

(2) Counts I (in part), II, and III (in part) are **dismissed** without prejudice. (Doc. 7.)

(3) Defendants Ryan, Klausner, Richardson, Trujillo, and Williams are **dismissed** without prejudice. (Doc. 7.)

(4) Defendants Stapleton and Dorsey must answer Counts I (in part) and III (in part). (Doc. 7.)

(5) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 7), this Order, and both summons and request for waiver forms for Defendants Stapleton and Dorsey.

(6) Plaintiff must complete[3] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the First Amended Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(8) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was**

---

[3] **Error! Main Document Only.**If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

**TERMPSREF**

- 10 -

**sent by the Marshal, the Marshal must**:

(a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendant must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

TERMPSREF

1  (13)  This matter is referred to Magistrate Judge James F. Metcalf pursuant to
2  Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as
3  authorized under 28 U.S.C. § 636(b)(1).
4  Dated this 7th day of May, 2014.

*David G. Campbell*
United States District Judge